156 N.J. Super. 516 (1978)
384 A.2d 178
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOUGLAS GIBSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1978.
Decided March 3, 1978.
*520 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Jeffrey Stuart Feldman argued the cause for appellant.
Mr. Simon Louis Rosenbach, Deputy Attorney General, argued the cause for respondent (Mr. John Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant Gibson, Franklin Horton and two others were indicted for possession of hashish with intent to distribute (N.J.S.A. 24:21-19(a)(1)), and possession of hashish and cocaine (N.J.S.A. 24:21-20(a)(1)). During the trial Horton pleaded guilty. The jury found defendant guilty of both counts, and acquitted the other two.
Defendant was then charged as a second offender and found guilty of that charge. He was sentenced to a 12-15-year term on the first count of the indictment and the second count was merged into the first; the sentence to be served consecutively to any sentence imposed for probation violation. A $5,000 fine was also imposed.
Thereafter he was charged with violating probation. It was alleged that the drug possession of which he had been convicted had occurred on August 28, 1975. At that time he was serving a two-year probationary term which, by its terms, was to end on March 15, 1976. The probation violation was not charged, however, until after defendant had been convicted of the substantive crime on October 22, 1976. Therefore, by the time he was found guilty, on November 5, 1976, of violating probation, his probationary term had ended in excess of seven months earlier.
*521 Defendant's appeal from the criminal trial and the second offender determination was consolidated with his appeal from the finding of probation violation.
Defendant raises the following arguments here:
(1) It was error for the State to fail to disclose to defense counsel that codefendant Horton had a charge pending against him at the time of trial.
(2) It was error to deny his mistrial motion based on Horton's hearsay testimony regarding other crimes committed by him.
(3) Horton's cross-examination was improperly restricted.
(4) Certain defense witnesses were improperly prevented from testifying regarding his state of mind.
(5) Cumulative error requires reversal.
(6) He was selectively prosecuted under the second offender provisions of the narcotics act.
(7) It was error to hold that he had violated probation.
(8) The sentence is excessive.
On August 28, 1975 codefendant Tisi, who worked with codefendant Horton, went to Horton's apartment so that Horton could pay Tisi for some work he had done. At about the same time Philander Smith drove codefendant Henderson and defendant Gibson to Horton's apartment. They arrived at about the same time as Tisi and Horton. Gibson left the car and walked to the apartment with the two. Smith remained in the car with Henderson. Thereafter, the latter got out of the car and went inside, ostensibly to use the bathroom. At about the same time, Smith saw four men walk toward the building and enter. Consequently, he drove away.
Tisi testified that while he was in the living room and Horton and defendant were in the bedroom, Henderson knocked at the door. She asked to use the bathroom and Tisi let her in. She walked into the bathroom. Almost immediately someone else knocked at the door, but this time Tisi did not open it. The door came crashing down and six police officers entered. One of the officers was James J. *522 Tomaini. He and the others were there to execute a search warrant.
Tisi claimed that when the officers entered Henderson was just coming out of the bathroom and Tisi was standing somewhere between the door and the bedroom. Tomaini testified, however, that as soon as he entered he saw Henderson and Tisi sitting at the dining room table and that on the table was a dish containing "two little straight lines" of a white powdered substance. The dish also contained a tightly rolled $5 bill. A tightly rolled bill is often used to inhale narcotics. He also said that he saw Horton in the bedroom.
Tomaini went into the bedroom and approached Horton. He saw Horton knock the screen out of the window and drop a brown paper bag out of the building. Tomaini looked out the window and saw that another police officer had caught the bag.
Tomaini and the others began to search the apartment. As Tomaini searched a 2'x5' closet in the bedroom, he found defendant inside, crouching, facing the side of the closet.
During the trial Horton pleaded guilty. He hold the jury that he understood that the prosecutor would tell the judge that he had cooperated, and that he hoped that the judge would be lenient but he had been made no promises regarding the length of his sentence.

I
At no time during the trial was there ever any indication that Horton had another charge pending against him when he testified. When defendant argued his new trial motion he alleged that sometime during the second day of Horton's testimony a prosecutor was presenting evidence to the grand jury, which several days after defendant's trial had been completed, resulted in an indictment against Horton. Defendant acknowledged that the prosecutor who was trying his case knew nothing about the possible charges against *523 Horton. Moreover, the trial judge at the new trial motion had before him an affidavit signed by Horton saying that he had no personal knowledge when he was testifying that there might be charges pending against him. Horton also testified at the new trial motion and insisted that he had known nothing of any charges pending against him until a week before the new trial motion which was argued on October 15, 1976, more than two weeks after defendant's trial had ended.
At the new trial motion defendant argued that the State had had an obligation to disclose the charges pending against Horton. The trial judge ruled that it did not matter whether someone in the prosecutor's office knew the charges might be brought against Horton. The key issue was whether Horton knew about the charges when he testified, and it was clear that he did not. The new trial motion was therefore denied.
Nevertheless, the judge gave defense counsel one week to produce evidence which might establish that Horton was not telling the truth when he said that he knew nothing about the charges. Apparently, no further evidence was submitted.
Defendant now maintains that Horton's claim that he was ignorant of the charges "should not be a factor in determining whether the defendant was harmed" since "Horton should not be the first and only determinant as to whether he knew that he had pending charges * * *."
The argument requires little consideration. Horton was the only one who could reasonably be expected to testify whether he knew about the pending charges. Moreover, the charges were not even pending at the time Horton testified. He was not indicted until after defendant's trial was over. The judge was therefore justified in concluding that Horton's testimony could not have been influenced because of the charges against him.

*524 II
Defendant argues that it was error to deny his mistrial motion which followed two occasions on which Horton testified "as to the specifics of what he had been told by an individual by the name of Jones."
Defendant does not clearly indicate to which of Horton's statements he refers. He does cite the mistrial motion which followed Horton's testimony that defendant could get cocaine from him at any time because "that is what I was told by Mr. Jones." Horton had testified earlier that defendant could get cocaine at any time he wanted it, and counsel had not objected though the court had asked if counsel intended to object.
While it is true that the trial judge denied defendant's mistrial motion, he also sustained the objection to the question and answer and told the jury to disregard both. We conclude that considering the judge's instructions, the drastic remedy of a mistrial was not required. State v. DiRienzo, 53 N.J. 360, 383 (1969).

III
Defendant claims that the trial judge "unfoundedly" restricted his cross-examination of Horton. He cites two examples: counsel tried to question Horton about the layout of his apartment, and he "attempted to cross-examine Horton as to possible bias from the cancellation of the insurance policy, and was prevented from asking the question and from approaching sidebar to explain himself."
We find no error. The trial judge properly ruled that the question about Horton's apartment exceeded the scope of direct examination since Horton had given no testimony on that point. In any event, we do not find that testimony as to the layout of Horton's apartment could have had any impact on the issues in the case. Apparently, what defendant wanted to do was to show that Tomaini had been wrong when he said that he could see into Horton's bedroom when *525 he entered the apartment. If defendant wanted to prove that fact, he could have put someone on as his own witness who would so testify.
As to the questions regarding bias resulting from the cancellation of the insurance policy, we find that defendant suffered no prejudice from the trial judge's rulings. The trial judge originally prevented the defense from questioning Horton about the insurance policy. However, he later specifically informed defense counsel that he had changed his mind and that counsel could ask Horton those questions if he wanted to. Counsel replied that he did not want to do that; instead, he wanted Horton's supervisor to give the necessary evidence. We find no error since the trial judge did not make the ruling defendant now asserts.

IV
Defendant next argues that the trial judge erroneously refused to allow defense witnesses to testify as to defendant's state of mind when he went to Horton's apartment. He apparently refers to the proffered testimony that Gibson said he went to the apartment to discuss insurance policies.
The State concedes that error occurred. See State v. Baldwin, 47 N.J. 379, 392-398 (1967). R. 63(12) allows introduction of a statement "made in good faith" which describes the declarant's state of mind, including statements of intent, plan or motive where such a mental condition is relevant to prove or explain acts or conduct of the declarant. It is somewhat difficult to believe that the statement involved here was "made in good faith," but even if that is presumed, we find that the exclusion of the evidence was harmless error at best.
Whatever defendant's intent in going to the apartment, the only intent relevant to the issue before this jury was his intent during the alleged drug transaction with Horton. Horton said that defendant asked for cocaine, that Horton *526 cut some for him and that defendant took it from Horton. Defendant was then found hiding in a closet. The evidence against him was strong. We cannot conclude that the excluded evidence would have led the jury to a different result. R. 2:10-2.

V
After defendant was found guilty the trial judge ordered that he be prosecuted as a second offender. N.J.S.A. 24:21-29. He now claims, without any supporting authority, that "a comparison of the case sub judice with cases in which habitual offenders' prosecutions have and have not been brought clearly indicates that the application was improper in the present case." In other words, he charges selective prosecution. He does not contend that he was not otherwise eligible for such treatment.
Since defendant presents no evidence whatever that he was arbitrarily and unjustifiably selected for prosecution, we find no merit to this contention. Oyler v. Boles, 368 U.S. 488, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Nothing in the record shows any "intentional and purposeful discrimination through the application of an invidious standard." State v. Kozarski, 128 N.J. Super. 513, 521-522 (Law Div. 1974), aff'd 143 N.J. Super. 12 (App. Div. 1976), certif. den. 71 N.J. 532 (1976). There is no reason to conclude that defendant was improperly prosecuted.

VI
We find no merit to defendant's next claim that the individual errors alleged above when considered together warrant reversal. State v. Orecchio, 16 N.J. 125, 129 (1954).

VII
The remaining question is novel: can a probationer be charged with and found guilty of violating probation once his probationary term has expired?
*527 On December 14, 1973 defendant received a suspended sentenced for possession of a controlled dangerous substance. He was placed on two years' probation. On March 15, 1975 he was found to have violated probation and he was resentenced to a 2-5-year State Prison term but the sentence was again suspended. His probationary term was extended for two additional years.
The second probationary term was to end on March 15, 1976. The crimes involved in the present case were committed on August 28, 1975, while defendant was still on probation. He was not charged, however, with a violation of probation at the time of arrest, and the probation department closed out his probationary term on March 15, 1976.
After he was convicted of the present charge on October 22, 1976 the trial judge directed that defendant be charged with violation of probation. During the probation revocation hearing on November 5, 1976 defense counsel argued that defendant could not be punished for violating probation because the probationary term had terminated. He repeats that argument on appeal, relying on the wording of the relevant statutes.
N.J.S.A. 2A:168-4 provides, in relevant part:
Upon a report from the chief probation officer that the probationer has complied with the conditions of probation and that the best interests of the public and the probationer will be subserved thereby or for other good cause, the court may, at any time, discharge a person from probation, or may extend the probation period within the limits of the maximum period provided by section 2A:168-1 of this title.
At any time during the probation period the court may issue a warrant and cause the probationer to be arrested for violating any of the conditions of his probation, or any probation officer, police officer, or other officer with power of arrest, upon the request of the chief probation officer, may arrest the probationer without a warrant; * * *. Such probation officer shall forthwith report such arrest or detention to the court and submit to the court a report showing the manner in which the probationer has violated his probation. Thereupon the court, after summary hearing, may continue or revoke the probation and the suspension of sentence, and may *528 cause the sentence imposed to be executed or impose any sentence which might originally have been imposed. * * *.
Defendant argues that this section means that a probationer's term can be discharged or extended by the court only while it is still running; that it permits arrest and trial as a violator only "during the probation period." The State, on the other hand, acknowledges that the statute does not specifically authorize revocation of probation after the term has expired. It urges, however, that we hold that the spirit of the legislation permits post-termination revocation. We cannot accept the State's position.
We acknowledge, of course, that the general principles underlying the State's argument constitute good policy reasons for allowing post-termination revocation. A defendant can be placed on probation only if that is in the best interests of the public and defendant. N.J.S.A. 2A:168-1. Probation presumes that the offender can be rehabilitated without serving a jail sentence and is designed to accomplish that goal: In re Buehrer, 50 N.J. 501, 509 (1967); State v. Moretti, 50 N.J. Super. 223, 232 (App. Div. 1958). Generally speaking, a probationer should be permitted to remain at large and to be relieved from serving his sentence only so long as he complies with the conditions of probation. See Adamo v. McCorkle, 26 N.J. Super. 562, 567 (App. Div. 1953), rev'd on other grounds, 13 N.J. 561 (1953), cert. den. 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080 (1954).
Our statute states that "[a]t any time during the probation period the court may issue a warrant and cause the probationer to be arrested for violating any of the conditions of his probation * * *." N.J.S.A. 2A:168-4. No language in it suggests that such warrant and arrest may be initiated once the term has expired.
A number of jurisdictions have considered this problem and reached different results.
In North Dakota it has been held that a proceeding to revoke probation may be brought after the probationary *529 term expires so long as it is instituted "with reasonable promptness and within the five-year period" authorized as a maximum probationary term. Decker v. State, 209 N.W.2d 879, 884 (N.D. Sup. Ct. 1973). The relevant statute in North Dakota provides that "[t]he court shall have authority at any time during the course of probation" to revoke, modify or terminate the probationary term. N.D.C.C. 12-53-17. The statute is therefore similar to ours, which allows issuance of a warrant and arrest "at any time during the probation period."
The Supreme Court of Nebraska has reached a similar conclusion. In State v. White, 193 Neb. 93, 225 N.W.2d 426, 427 (1975), it was held that "a proceeding to revoke probation may be instituted within the probationary period or within a reasonable time thereafter." But the court had earlier emphasized that Nebraska had no statutory provision that a court could revoke probation "at any time during the period of probation." Phoenix v. State, 162 Neb. 669, 77 N.W.2d 237, 241 (Sup. Ct. 1956). State v. Holiday, 182 Neb. 229, 153 N.W.2d 855, 858 (Sup. Ct. 1967). Our statute does have such a provision and accordingly we do not find the Nebraska cases to be persuasive.
Pennsylvania has developed a similar rule. There, probation must be revoked within a reasonable time after the probationary term expires. Commonwealth v. Lipton, 238 Pa. Super. 124, 352 A.2d 521 (Super. Ct. 1975).
The State cites a Wisconsin case, Williams v. State, 50 Wis.2d 709, 184 N.W. 844 (Sup. Ct. 1971), as holding that probation can be revoked after the term expires. The case does so hold, but we note that Wisconsin has a statute, W.S.A. 57,072, which tolls the running of the probationary period if defendant commits a crime or violates the terms of probation. The case is not helpful here.
Both Texas and Oklahoma have held that if a step in revocation proceedings takes place within the term of probation, the revocation hearing may be held and probation revoked after the term of revocation has expired. Lynch v. *530 State, 502 S.W.2d 740 (Tex. Cr. App. 1973); Barthiume v. State, 549 P.2d 366 (Okl. Cr. App. 1976).
Other jurisdictions flatly refuse to permit post-expiration termination. Some of them, however, have statutory provisions requiring that the probationer must be released when the term of probation is completed. State v. Jones, 285 So.2d 231, 233-234 (La. Sup. Ct. 1973) (La. C. Cr. Proc. 899); In re Griffin, 67 Cal.2d 343, 62 Cal. Rptr. 1, 431 P.2d 625, 627 (1967). (Cal. Pen. C. § 1203.3); Brooker v. State, 207 So.2d 478 (Fla. App. 1968) (F.S.A. 948.04). Our statute does not contain a mandatory provision.
In South Carolina the statute provides that a warrant for probation revocation may be issued "at any time during the period of probation." S.C. Code § 55-595 (1962). The statute is therefore like ours. The South Carolina Supreme Court has held that a court is without jurisdiction to revoke probation after the probationary term has expired. State v. Hutto, 252 S.C. 36, 165 S.E.2d 72, 76 (1968).
Both New York and Arizona have held that even where a defendant is served with a notice of a probation violation during the probationary period, his probation cannot be revoked unless the hearing and the order revoking probation also occur within the probationary term. Keller v. Sup. Ct. in & for Cty. of Maricopa, 22 Ariz. App. 122, 524 P.2d 956 (Ct. App. 1974); People v. Cooper, 53 Misc.2d 42, 280 N.Y.S.2d 920 (Cty. Ct. 1967).
The cases, then, fall into three general categories: (1) probation may be revoked so long as the proceedings are initiated within a reasonable time after expiration of the probationary period; (2) probation may be revoked if the proceedings are instituted within the probationary period; (3) probation may be revoked only when the proceedings are completed within the probationary period. The statutes vary, but it is clear that a number of jurisdictions with statutes similar to ours have held that probation cannot be revoked after the probationary term expires.
*531 We conclude that in order for the court to have jurisdiction to revoke probation and punish a probationer for violation of a probationary condition under N.J.S.A. 2A:168-4, the warrant must issue during the probationary period. Where violation proceedings are not initiated within the probationary term, the courts are without jurisdiction to revoke probation. Of course, it should be noted that the probationary term is tolled for any period during which the probationer absconds or hides. N.J.S.A. 2A:168-1.
In view of the fact that the revocation proceedings here were instituted after the expiration of defendant's probationary term, we need not decide when such revocation proceedings must be concluded.
We do not find defendant's sentence to be manifestly excessive.
Defendant's conviction for violation of probation is vacated. The conviction for possession with intent to distribute is affirmed.