812 A.2d 409

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
GEORGE J. THOMAS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 2, 2002—Decided December 31, 2002.

Before Judges HAVEY, WELLS and PAYNE.

*Christopher DeFalco* argued the cause for appellant (*Yvonne Smith Segars, Public Defender,* attorney; *Mr. DeFalco,* of counsel and on the brief).

*Dorothy Hersh, Assistant Prosecutor,* argued the cause for respondent (*Daniel G. Giaquinto, Mercer County Prosecutor,* attorney; *Ms. Hersh,* of counsel and on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Defendant George Thomas was indicted in I–92–06–614 for receipt of stolen property in violation of *N.J.S.A.* 2C:20–7a and 2C:2–6, having been found as a passenger in a stolen auto. He was indicted in I–96–03–290 for, among other things, fraudulent use of a credit card in violation of *N.J.S.A.* 2C:21–6h and theft by deception from a supermarket, Mayfair Foodtown, in violation of *N.J.S.A.* 2C:20–4. He pled guilty to the stated charges in both indictments, and on June 14, 1996, he was sentenced to a three-year period of probation, with the requirement that he pay restitution in the amount of $2,979.22 and perform a specified amount of community service. In determining the appropriate sentence on the two offenses, the sentencing judge found as an aggravating factor number 9 (the need to deter defendant and others from violating the law) and, as mitigating factors, numbers 1 (defendant's conduct neither caused nor threatened serious harm), 7 (defendant had no history of prior delinquency or criminal activity), 9 (the character and attitude of the defendant indicated that he was unlikely to commit another offense), and 10 (defendant was particularly likely to respond affirmatively to probationary treatment). *See N.J.S.A.* 2C:44–1a(9) and –1b(1), (7), (9), and (10).

Exactly one year after he was placed on probation, on June 14, 1997, Thomas was stopped for speeding on the New Jersey Turnpike, and it was discovered that he was driving a stolen car. He was therefore charged in I–98–08–796 with receipt of stolen property, *N.J.S.A.* 2C:20–7a, and unlawful withholding of a means of conveyance, *N.J.S.A.* 2C:20–10b. He was tried on those charges and convicted. Prior to sentencing, he pled guilty to a charge of harassment, *N.J.S.A.* 2C:33–4, set forth as Count One of

I–99–03–292, as the result of another offense committed on June 24, 1998 while on probation.

Despite the fact that Thomas had committed violations of the terms of his probation on two occasions during his probationary period, charges were not filed at the time of either the 1997 or 1998 arrest. Instead, no action was taken by the probation department until June 11, 1999, two days before the three-year probationary period ended. At that time, according to the testimony of Thomas' probation officer given at a hearing conducted in the matter, she prepared an arrest warrant that was signed by a Chief Green. She stated as well that the warrant had been filed on June 16, 1999, a few days after the expiration of probation, and had been entered in a computer by an employee of the Mercer County Sheriff's Department on that same day. However, the warrant never appeared as a computerized entry, and its existence was not disclosed to the State or Thomas' attorney during any of his court appearances in connection with his subsequent trial on charges related to receipt of stolen property or his plea of guilty to the charge of harassment. A formal petition seeking revocation of probation was not prepared until February 10, 2000.

Twelve days thereafter, on February 22, 2000, defendant was sentenced on I–98–08–796 and I–99–03–292. It was intended that a revocation hearing and sentencing on the probationary violations would occur simultaneously with sentencing on the 1998 and 1999 indictments. However, defendant took the position that the court lacked jurisdiction over the violations because revocation proceedings were not "commenced" until some time after the probationary period expired. A hearing was therefore scheduled on that issue, and sentencing proceeded on the remaining charges.

The sentencing judge sentenced Thomas to the maximum five-year term on the third-degree receipt of stolen property charge and to a concurrent eighteen-month term on the fourth-degree harassment charge. The fourth-degree charge of unlawful withholding of a means of conveyance was merged into the charge of receipt of stolen property. In sentencing on the stolen property

charge, the judge found as aggravating factors numbers 3 (the risk that defendant would commit another offense), 6 (the extent of his prior record), 9 (the need for deterrence), and "14"—the fact that the crime was committed while defendant was on probation. *See N.J.S.A.* 2C:44–1a(3), (6), and (9). Factor number 2 (that defendant did not contemplate that his conduct would cause or threaten serious harm) was found as a mitigating factor. *See N.J.S.A.* 2C:44–1b(2). In sentencing on the harassment charge, the judge found as aggravating factors 3, 6, 8 (that the offense was committed against a police officer) and "14," with number 2 as a mitigating factor. *See N.J.S.A.* 2C:44–1a(3), (6), and (8) and – 1b(2). Aggravating factor "14" was enumerated on the judgments of conviction, as well.

Following a hearing, the judge found the revocation of probation to have been timely commenced, and that jurisdiction over it existed. He therefore sentenced Thomas on the violations to concurrent three-year custodial terms, consecutive to the sentences imposed in connection with I–98–08–796 and I–99–03–292. The sentences were justified by the removal of the mitigating factors found previously.

In these consolidated appeals from the sentences imposed for the violations of probation (A–1488–00T4) and from the court's exercise of jurisdiction over the revocation proceedings and its imposition of a five-year sentence on Thomas for his conviction for receipt of stolen property (A–1493–00T4),[1] Thomas makes the following arguments:

---

[1] On November 16, 2001, Thomas filed an appeal docketed as (A–1488–00T4) challenging the sentences imposed for the violations of probation. Thomas filed a second appeal (A–1493–00T4) on November 17, 2001, in which he argued that the five-year sentence received on the receipt of stolen property charge was excessive and that the trial court lacked jurisdiction to revoke his probation because the revocation was untimely.

The existence of the two appeals and their partially duplicative content was disclosed at an excessive sentence oral argument held on May 8, 2002 when counsel for Thomas addressed the issue of the trial court's jurisdiction over the

Point I The Trial Court Lacked Jurisdiction To Revoke Probation Because The Probationary Period Had Long Expired Before the State Commenced Any Revocation Proceeding

Point II The Five Year Sentence Imposed By The Court Is Excessive

We address Thomas' arguments in the order in which they have been presented.

## I.

■ We have previously held that "[w]here violation proceedings are not initiated within the probationary term, the courts are without jurisdiction to revoke probation." *State v. Gibson,* 156 *N.J.Super.* 516, 531, 384 *A.*2d 178 (App.Div.), *certif. denied,* 78 *N.J.* 411, 396 *A.*2d 598 (1978)(construing prior statute, *N.J.S.A.* 2A:168–4). *See also State v. Grabinski,* 245 *N.J.Super.* 402, 405, 585 *A.*2d 979 (App.Div.1991) (applying *Gibson* in the context of *N.J.S.A.* 2C:45–3c); *State v. Hyman,* 236 *N.J.Super.* 298, 301, 565 *A.*2d 1086 (App.Div.1989); and *State v. DeChristino,* 235 *N.J.Super.* 291, 295, 562 *A.*2d 236 (App.Div.1989) ("a proceeding for the revocation of probation must be commenced, if at all, prior to the expiration of the period of probation."). *Rule* 3:21–7(c) likewise restricts revocation to the period before the expiration of probation, stating: "At any time before termination of the period of . . . probation, the court may revoke . . . probation pursuant to N.J.S.A. 2C:45–3."

*N.J.S.A.* 2C:45–3c provides for a tolling of the probationary period upon commencement of a revocation proceeding, stating:

c. The commencement of a probation revocation proceeding shall toll the probationary period until termination of such proceedings. . . .

However, what constitutes "commencement" is unspecified.

Thomas argues in his appeal that the actions of the probation officer in this case were insufficient to constitute commencement of a revocation proceeding, and thus that the trial court lacked jurisdiction over that proceeding. We agree.

---

probation revocation proceedings. The appeals were thereupon consolidated and scheduled for hearing on all issues on December 2, 2002.

In our prior decisions, we have considered what constituted the commencement of revocation proceedings in a variety of contexts. In *DeChristino*, a case in which no action was taken prior to the end of the probationary period, we nonetheless addressed the meaning of commencement in *dictum*, stating:

> Neither [*N.J.S.A.* 2C:45–3c] nor any court rule prescribes how a probation proceeding shall be commenced, but neither is there any provision that arrest of the probationer or effective service of notice upon him is necessary to constitute "commencement" of the probation proceeding for purposes of tolling the probation period. Although the issue is not before us in the present case, we assume that the preparation of a formal notice of violations and the issuance of a warrant for the probationer's arrest would constitute the "commencement of a probation revocation proceeding" which would toll the probationary period, provided that reasonably diligent efforts to effect service were unsuccessful.
>
> [*Id.* 235 *N.J.Super.* at 297, 562 *A.*2d 236.]

Later that year, we held in *Hyman*, a case in which a notice of violation of probation and authorization for defendant's arrest had issued prior to the termination of the probationary period, but defendant was not arrested until more than one year after the probationary period had expired, that, despite the absence of "reasonably diligent efforts to effect service," defendant, who admitted to attempting to evade apprehension, was estopped from asserting that the State lacked diligence in trying to find him. *Id.* 236 *N.J.Super.* at 302, 565 *A.*2d 1086 (*quoting DeChristino, supra,* 235 *N.J.Super.* at 297, 562 *A.*2d 236). In these circumstances, we held that "the issuance of the notice of violations and the warrant for defendant's arrest tolled the expiration of his probation period and the ... revocation proceedings were commenced within time." *Hyman, supra,* 236 *N.J.Super.* at 302, 565 *A.*2d 1086.

We next addressed the issue of commencement in 1991 in our decision in *Grabinski*. At the trial level, defendant had successfully challenged the court's jurisdiction over her probation revocation proceedings by arguing that timely filing of a complaint by a Warren County probation officer with the Warren County clerk of the Superior Court, Law Division was insufficient to "commence" a revocation proceeding since a notice summoning defendant to appear before the Superior Court for revocation proceedings had

not been sent prior to the termination of the probationary period. On appeal by the State, however, we rejected defendant's position. In doing so, we affirmed our conclusion in *Gibson*, reached after construing provisions of the State's prior Criminal Code, that if violation proceedings are not initiated during the probationary period, the court lacks jurisdiction to revoke probation. *Id.* 245 *N.J.Super.* at 405, 585 *A.*2d 979. We held further that we were satisfied that, "under the present Criminal Code, probation revocation proceedings are commenced by the filing of a probation violation complaint with the court." *Ibid.* "The subsequent issuance of a summons or warrant within a reasonable time thereby occurs prior to the termination of probation, as the period of probation is tolled upon the filing of the notice or complaint." *Id.* at 406, 585 A.2d 979. In reaching this conclusion, we discussed our decision in *DeChristino* and determined that the trial judge had misconstrued it. We stated:

> The Law Division judge, in dismissing the violation of probation complaint filed against the defendant, relied upon our statement in *DeChristino* that "we assume that the preparation of a formal notice of violations and the issuance of a warrant for the probationer's arrest would constitute the 'commencement of a probation revocation proceeding' ...." *Id.* [235 *N.J.Super.* at 296, 562 *A.*2d 236.] That dictum should not have compelled the judge here to hold that, in addition to the filing of a formal notice of violations during the probationary period, the warrant must also have issued prior to the designated expiration of the probationary period.
> [*Id.* at 405, 585 *A.*2d 979.]

We found our conclusion to be "consistent with the general provision of the Criminal Code that in New Jersey '[a] prosecution is commenced for a crime when an indictment is found ... provided that such warrant or other process is executed without unreasonable delay.' *N.J.S.A.* 2C:1–6d." *Id.* at 407, 585 *A.*2d 979.

In the present case, a notice of violation in the form of a petition for revocation was not filed until February 10, 2000, a time approximately eight months after Thomas' probationary period had expired. Further, no alternative proceedings in conformance with authority granted by *N.J.S.A.* 2C:45–3 had occurred before the termination of the period of probation. *See N.J.S.A.* 2C:45–3a(1)–(3). We therefore find that the attempt to revoke Thomas'

probation was untimely, and thus that the trial court lacked jurisdiction over the revocation proceeding. The court's determinations that probation was violated are reversed and the sentences imposed as the result are therefore vacated.

We recognize that policy reasons exist to support post-termination revocation. As we stated in *Gibson:*

> A defendant can be placed on probation only if that is in the best interests of the public and defendant.... Probation presumes that the offender can be rehabilitated without serving a jail sentence and is designed to accomplish that goal: *In re Buehrer,* 50 *N.J.* 501, 509, 236 *A.2d* 592 (1967); *State v. Moretti,* 50 *N.J.Super.* 223, 232, 141 *A.2d* 810 (App.Div.1958). Generally speaking, a probationer should be permitted to remain at large and to be relieved from serving his sentence only so long as he complies with the conditions of probation. See *Adamo v. McCorkle,* 26 *N.J.Super.* 562, 567, 98 *A.2d* 597 (App.Div.1953), rev'd on other grounds, 13 *N.J.* 561, 100 *A.2d* 674 (1953), *cert.* den. 347 *U.S.* 928, 74 *S.Ct.* 531, 98 *L.Ed.* 1080 (1954).
>
> [*Gibson, supra,* 156 *N.J.Super.* at 528, 384 *A.2d* 178.]

We recognize as well that, in finding jurisdiction over Thomas' violations of probation to be absent, we have freed him from service of an otherwise justifiable consecutive three-year sentence. However, we are constrained by our view of the law, which, we find, requires a degree of formality in the institution of probation revocation proceedings that simply is lacking in this case.[2] We

---

[2] We have held:

> A charge of a violation of probation is not a criminal prosecution but rather "a part of the correction process." *State v. Reyes,* 207 *N.J.Super.* 126, 134, 504 *A.2d* 43 (App.Div.), *certif. denied,* 103 *N.J.* 499, 511 *A.2d* 671 (1986). Therefore, a defendant accused of violating the terms of probation is not entitled to indictment or trial by jury, *State v. Zachowski,* 53 *N.J.Super.* 431, 440, 147 *A.2d* 584 (App.Div.1959), and he may be found guilty by a simple preponderance of the evidence. *State v. Reyes, supra,* 207 *N.J.Super.* at 134–37, 504 *A.2d* 43. Furthermore, a violation of probation may be based on hearsay evidence which would be inadmissible in a criminal trial. *Id.* at 138–39, 504 *A.2d* 43.
>
> But while a charge of a violation of probation is not a criminal prosecution, it may result in a loss of liberty. Consequently the United States Constitution requires a defendant charged with a violation of probation to be accorded due process of law *Gagnon v. Scarpelli,* 411 *U.S.* 778, 781–82, 93 *S.Ct.* 1756, 1759–60, 36 *L.Ed.2d* 656, 661–62 (1973). The Code of Criminal Justice codifies and to some extent expands upon the due process rights

regard the casual steps undertaken by Thomas' probation officer in preparing an arrest warrant for filing to be insufficient to toll the termination of Thomas' probationary period. The mere preparation of a warrant cannot serve to trigger those safeguards that are essential to protect defendants against potential procedural abuses by the State and to protect the civil liberties of those individuals who are found, after a hearing, to be innocent.

## II.

 Defendant has also appealed from the five-year sentence imposed upon him as the result of his conviction for receipt of stolen property, as charged in I–98–08–796, arguing that imposition of a sentence in excess of the four-year presumptive term was excessive in the circumstances presented. Again, we agree.

The court below rationalized Thomas' five-year custodial sentence, in part, by weighing statutory aggravating factors 3, 6 and 9 against mitigating factor 2 and finding additionally that mitigating factor 2 had little weight. *See N.J.S.A.* 2C:44–1a(3), (6) and (9); *N.J.S.A.* 2C:44–1b(2). However, the court impermissibly tipped the balance further by considering as an additional aggravating factor what he termed "factor 14," the commission while on probation of the offenses for which sentences were being imposed.

 The fact that additional offenses have been committed while a defendant is on probation can properly be considered in connection with an analysis of aggravating factor 6: The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted. *State v. Tarver,* 272 *N.J.Super.* 414, 434, 640 *A.2d* 314 (App.Div.1994). *See also State*

---

guaranteed by the Constitution by providing that an accused probationer is entitled to "a hearing upon written notice to the defendant of the grounds on which such action is proposed, ... the right to hear and controvert the evidence against him, to offer evidence in his defense, and to be represented by counsel." *N.J.S.A.* 2C:45–4; *see State v. Reyes, supra,* 207 *N.J.Super.* at 134, 504 *A.2d* 43.

[*State v. Lavoy,* 259 *N.J.Super.* 594, 600, 614 *A.2d* 1077 (App.Div.1992).]

*v. Ghertler,* 114 *N.J.* 383, 386, 555 *A.2d* 553 (1989). However, the sentencing court lacks the power to import aggravating factors that are not contained within the Criminal Code's sentencing guidelines. *State v. Roth,* 95 *N.J.* 334, 363–64, 471 *A.2d* 370 (1984); *N.J.S.A.* 2C:44–1a ("In determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court shall consider the following aggravating circumstances.").

■ Further, discretionary sentencing decisions must be "based upon findings of fact that are grounded in competent, reasonably credible evidence." *Roth, supra,* 95 *N.J.* at 363, 471 *A.2d* 370 (*citing State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.2d* 809 (1964)). In the present case, the sentencing judge found none of the crimes in which Thomas had engaged to be particularly serious. In this regard, he stated:

> Now, the offenses for which you were placed on probation were not serious, they were not the most serious nature, and these [present] offenses are not of the most serious nature. But still, you have a record that is not enviable and you shouldn't have that.

Nonetheless, the commission of those offenses constituted the principal basis for the court's invocation of aggravating factors 3, 6, 9 and "14" and its determination that those aggravating factors weighed so heavily in comparison to mitigating factor 2 that a sentence one year in excess of the statutorily presumptive four years should be imposed.

We do not accept defendant's argument that additional mitigating factors 1 and 11 should have been found by the sentencing court to exist. The court's discretionary determination in that regard was not so wide of the mark as to warrant reversal. *Tarver, supra,* 272 *N.J.Super.* at 434–35, 640 *A.2d* 314. However, we find error in the trial court's determination and weighing of aggravating factors of sufficient magnitude to require reversal of Thomas' sentence as excessive under an abuse of discretion standard, since the court's findings lacked fair support in the evidence and its enumeration of aggravating factors violated legislative guidelines expressed in the Criminal Code. *See Roth, supra,* 95

*N.J.* at 364, 471 *A.*2d 370; *State v. Towey,* 244 *N.J.Super.* 582, 595, 583 *A.*2d 352 (App.Div.1990) ("The qualitative assessment [of aggravating and mitigating factors] must always have the severity of the crime as its principal consideration."); *N.J.S.A.* 2C:44–1a. For these reasons, we exercise our original jurisdiction to reduce defendant's sentence to the presumptive term. *State v. Louis,* 117 *N.J.* 250, 251, 566 *A.*2d 511 (1989).

We therefore remand this matter for amendment of defendant's judgment of conviction on I–98–08–796 to reflect our imposition of a four-year custodial sentence on him for receipt of stolen property. That sentence shall be served concurrently with the eighteen-month custodial sentence imposed in connection with I–99–03–292. We reverse the revocations of defendant's probation and vacate the accompanying sentences entered in connection with I–92–06–614 and I–96–03–290. Defendant's appeals raise no issues with respect to the plea or sentence imposed in connection with I–99–03–292, and we do not disturb them.