**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1626-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

TYRE D. BUSSEY, a/k/a
POPS,

    Defendant-Respondent.

_____

Submitted June 3, 2025 – Decided June 26, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 22-10-0414.

Kristin J. Telsey, Salem County Prosecutor, attorney for appellant (Matthew M. Bingham, Assistant Prosecutor, of counsel and on the brief).

Jennifer Nicole Sellitti, Public Defender, attorney for respondent (Andrew R. Burroughs, Designated Counsel, on the brief).

PER CURIAM

The State appeals the sentence imposed on defendant Tyre D. Bussey's guilty plea conviction for second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5b(1). The firearm offense to which defendant plead guilty falls under the mandatory provisions of the Graves Act[1] requiring a mandatory forty-two months of parole ineligibility unless the State moves pursuant to N.J.S.A. 2C:43-6.2 for a waiver, or if the court determines the Stater's failure to move for the waiver was a patent and gross abuse of discretion. Because the trial court failed to rule on defendant's motion to set aside the State's denial of the Graves Act waiver before it sentenced defendant to one-year of parole ineligibility, we reverse and remand.

I.

On March 13, 2022, New Jersey State Police Detectives Sergio Molina and Michael Katz were walking into a Family Dollar store in Salem. They were in plain clothing when defendant approached them and propositioned Molina to sell him marijuana. Katz knew defendant and continued into the store leaving Molina to interact with defendant. Defendant told Molina that he would sell

---

[1] The Graves Act is named for Senator Francis X. Graves, Jr., who sponsored legislation in the 1980s mandating imprisonment and parole ineligibility for persons who committed certain offenses with a firearm. The term now refers to all gun crimes that carry a mandatory minimum term of imprisonment.

him an eighth of weed for $30. Molina declined but asked for defendant's number for a possible later transaction; defendant gave him his phone number. Before Molina could leave, defendant said he was carrying a "blick" while opening his jacket and showing Molina the butt of a handgun protruding from the interior of the lined pocket.

Both detectives left the Family Dollar parking lot and notified surrounding police units. Three other New Jersey State Police detectives responded to the Family Dollar and arrested defendant and recovered from his inside jacket pocket a handgun, with hollow point bullets, a bag of marijuana in the outside jacket pocket, and $83 in cash. Detectives further found a digital scale and a box of clear plastic bags on the front passenger seat of defendant's car. The handgun was determined to be a semiautomatic pistol. Its serial number was obliterated and unrestorable.

In October 2022, defendant was indicted by a grand jury for the following offenses: fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3f(1); fourth-degree unlawful possession of a defaced firearm, N.J.S.A. 2C:39-3d; second-degree possession of a weapon in the course of committing a controlled dangerous substance ("CDS") offense, N.J.S.A. 2C:35-5; second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5b(1);

and third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5a(1). Defendant was also charged with fourth-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7A.

In August 2023, defendant pled guilty to second-degree possession of a weapon for an unlawful purpose. The State agreed to dismiss all other charges as well as recommend a sentence of five years in prison with a forty-two-month period of parole ineligibility pursuant to the Graves Act. Defendant also pled guilty to two violations of probation on unrelated matters. All three sentences were to run concurrent with each other.

Sentencing was scheduled for October 2023, and December 2023. Both dates were postponed at defendant's request. Three days before the new sentencing date in January 2024, defendant filed a notice of motion to overrule the State's denial of a Graves Act waiver. No brief was filed with the motion. Two days later, the State filed a letter brief in opposition to defendant's motion. The State attached its prior letter to defense counsel explaining its reasoning in denying the requested Graves Act waiver.

On January 12, 2024, the parties appeared before the court for sentencing. Defense counsel advised the court that he did not anticipate the motion and sentencing going forward. He further requested that the matter be postponed so

A-1626-23

that arguments could be made "at a later time," and that he was "not ready to make an argument on that point." Nevertheless, the court requested the State to place its position on the record. The State indicated that it opposed the motion.

When asked to respond, defense counsel indicated that he was not prepared to address arbitrariness, that the assistant prosecutor did his job "properly" in reviewing the waiver request and that he had other points to make, but he was not ready to make them. He further requested a one-week postponement for the sentencing. The court then moved to sentencing without ever ruling, or making findings, on the defense motion to overrule the State's denial.

When sentencing defendant, the court, after finding the aggravating and mitigating factors were in equipoise, recognized that the plea called for a forty-two-month parole disqualifier. The court then stated that,

> The question as I see it really comes down to whether it should be the five, do forty-two-months that [the State] has argued for, and I will note for the record that [the assistant prosecutor] has prepared the most thorough explanation that I've ever seen a prosecutor offer to a defense attorney about why he's making the offer he makes. So he's to be commended for that, and I've given that quite a lot of thought.
>
> When I think about this case, I think about the myriad of cases that we're seeing in Salem County

where we do offer people a five, do one as opposed to a five, do forty-two months . . .

In this particular case it would seem to me that Mr. Bussey has demonstrated not only an intention to be somebody different, but an effort to make that happen for him and his five children.

In my view, under all the circumstances a sentence of five, do one would serve the interests of justice and would accomplish the goal of sending a message that unlawful possession of a firearm is not to be tolerated.

The court then, over the State's objection, sentenced the defendant to a five-year term with a one-year parole disqualifier. This appeal followed.

The State's appeal was listed on this Court's September 17, 2024 Sentencing Oral Argument calendar. See R. 2:9-11. The reviewing panel ordered the matter relisted for plenary review.

## II.

Review of a sentence imposed is guided by an abuse of discretion standard. State v. Torres, 246 N.J. 246, 272 (2021). However, this deferential standard "only applies if the trial judge follow[ed] the [Criminal] Code and the basic precepts that channel sentencing discretion." State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Case, 220 N.J. 49, 65 (2014)). A "sentencing court's interpretation and application" of the Code "raises an issue of law that

6

[an appellate court] review[s] de novo."  State v. Hudson, 209 N.J. 513, 529 (2012).  The same standard applies to review of whether a defendant's sentence is illegal.  State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016).

III.

A.

Pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), any person convicted of the unlawful possession of a firearm, N.J.S.A. 2C:39-5(b), "shall be sentenced to a term of imprisonment . . . ."  The Graves Act further requires that "[t]he term of imprisonment shall include the imposition of a minimum term[,] . . . fixed at one-half of the sentence imposed by the court or forty-two months, whichever is greater . . . during which the defendant shall be ineligible for parole."  Ibid.

In 1989, the Legislature enacted a limited exception under N.J.S.A. 2C:43-6.2, known as the Graves Act escape valve.  The purpose of the amendment was to allow trial courts to exercise greater discretion in the sentencing of first-time firearms offenders where the imposition of the mandatory minimum terms required by the Graves Act were deemed to be "unnecessarily and unproductively harsh."  Cannel, New Jersey Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:43-6.2 (2025).  This exception states:

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under (a) subsection c. of N.J.S.[A.] 2C:43-6 for a defendant who has not previously been convicted of an offense under that subsection, or (b) subsection e. of N.J.S.[A.] 2C:39-10 for a defendant who has not previously been convicted of an offense under chapter 39 of Title 2C of the New Jersey Statutes, does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to paragraph (2) of subsection b. of N.J.S.[A.] 2C:43-2 or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.
>
> [N.J.S.A. 2C:43-6.2 (emphasis added).]

It is important to note the Legislature vested the initial decision to seek waiver with the prosecutor.

As with other prosecutorial decisions, a reviewing court lacks authority "to substitute [its own] discretion for that of the prosecutor . . . ." State v. Waters, 439 N.J. Super. 215, 237 (App. Div. 2015) (quoting State v. Nwobu, 139 N.J. 236, 253 (1995)) (discussing prosecutor's decision to permit pre-trial intervention for gun possession offense). "Rather, courts must 'view the prosecutor's decision through the filter of the highly deferential standard of

review.'" Id. at 237-38 (quoting State v. Wallace, 146 N.J. 576, 589 (1996)). Because the prosecutor did not agree to seek a Section 6.2 waiver, the burden rests upon defendant, who must show "'the prosecutor arbitrarily or unconstitutionally discriminated' against a defendant" when making the determination. State v. Mastapeter, 290 N.J. Super. 56, 65 (App. Div. 1996) (quoting State v. Alvarez, 246 N.J. Super. 137, 147 (App. Div. 1991)).

The judicial discretion embodied in examination of a prosecutor's Section 6.2 waiver decision— that is, whether a custodial sentence "does not serve the interest of justice"—is an objective legal standard based on the facts presented. The interest of justice standard has a very limited application and requires a court to consider whether "the sentence reflect[s] the Legislature's intention" because "the severity of the crime [is] the most single important factor in the sentencing process." State v. Megargel, 143 N.J. 484, 500 (1996). A judge "must consider the nature of and the relevant circumstances pertaining to the offense[,]" including "facts personal to the defendant" such as the "defendant's role in the incident to determine the need to deter him [or her] from further crimes and the corresponding need to protect the public from him [or her]." Id. at 500- 01.

A-1626-23

In State v. Alvarez, 246 N.J. Super. 137(App. Div. 1991), we concluded that the Graves Act escape valve was "constitutional because the Assignment Judge has the ultimate authority to decide whether the prosecutor arbitrarily or unconstitutionally discriminated against a defendant in determining whether the 'interests of justice' warrant reference to the Assignment Judge." Id. at 147. See State v. Benjamin, 228 N.J. 358, 364 (2017) (permitting a "defendant[] to appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor"); see also State v. Rodriguez, 466 N.J. Super. 71, 87 (App. Div. 2021) (finding the "defendant failed to establish that the prosecutor's rejection of his request for a Graves Act waiver constituted a patent and gross abuse of discretion.").

In Alvarez, we also noted that, under N.J.S.A. 2C:43-6.2, the Assignment Judge has the ultimate sentencing responsibility and has been given a choice of sentences that can be imposed for first-time Graves Act offenders. 246 N.J. Super. at 145. We stated the Assignment Judge "can impose a probationary sentence pursuant to N.J.S.A. 2C:43- 2(b)(2) or impose a custodial sentence within the authorized range for the offense with a mandatory ineligibility term of one year." Ibid. We added, however, the Assignment Judge "cannot consider either of these alternatives or options without the prosecutor's consent." Ibid.

An Assignment Judge may delegate their authority to the Criminal Part presiding judge. See State v. Nance, 228 N.J. 378, 392 (2017); see also R. 1:33-6(a).[2]

B.

We begin with the State's argument that the court's failure to rule on defendant's motion regarding the State's failure to seek a Graves Act waiver prior to sentencing constituted an "illegal sentence." In contrast, defendant contends that, because this was a discretionary decision, the State does not have standing to appeal. Moreover, defendant asserts by imposing one-year of parole ineligibility, the trial court issued a sentence consistent with the Code.

"[A]bsent explicit statutory authority, the State has no right to appeal a sentence." State v. Veney, 327 N.J. Super. 458, 460 (App. Div. 2000). However, "the State may appeal an illegal sentence without express authorization in the . . . [C]ode or rules of court." State v. Chambers, 377 N.J. Super. 365, 370 (App. Div. 2005) (quoting State v. Parolin, 339 N.J. Super. 10, 13-14 (App. Div. 2001), rev'd on other grounds, 171 N.J. 223 (2002)).

> There are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law. State v.

[2] In this case, the sentencing court was both the Presiding Judge and Acting Assignment Judge as this is standard in Salem County for matters related to the Salem County Prosecutor's Office due to the familial relationship between the Salem County Prosecutor and the Vicinage XV Assignment Judge.

> Schubert, 212 N.J. 295, 308 (2012). Those two categories of illegal sentences have been "defined narrowly." State v. Murray, 162 N.J. 240, 246 (2000).
>
> [State v. Hyland, 238 N.J. 135, 145 (2019).]

"[E]ven sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law." Id. at 146.

In contrast, if a sentencing court improperly applies a nondiscretionary factor that requires an objective, per se legal determination, the State could appeal that sentence as illegal under the Criminal Code. Id. at 148. A sentence "not imposed in accordance with law" includes a "disposition [not] authorized by the Code." Murray, 162 N.J. at 247. Additionally, a "sentence based upon a factor which is unrelated to the sentencing criteria set forth in the Code of Criminal Justice" is an illegal sentence. State v. Wilson, 206 N.J. Super. 182, 184 (App. Div. 1985). For instance, "the sentencing court lacks the power to import aggravating factors that are not contained within the Criminal Code's sentencing guidelines." State v. Thomas, 356 N.J. Super. 299, 310 (App. Div. 2002).

Our review of a sentence is thus limited to consideration of the following:

(1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."

[State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

The Graves Act was "[e]nacted in 1981 as 'a direct response to a substantial increase in violent crime in New Jersey,' the Graves Act is intended 'to ensure incarceration for those who arm themselves before going forth to commit crimes.'" State v. Nance, 228 N.J. at 390 (quoting State v. Des Marets, 92 N.J. 62, 68 (1983)). "Underlying this statute is a legislative intent to deter individuals from committing firearm-related crimes by calling for a mandatory minimum term of imprisonment for those convicted of Graves Act offenses." Benjamin, 228 N.J. at 368 (2017) (citing Des Marets, 92 N.J. at 71).

From the start, our Supreme Court took steps to ensure strict adherence to the mandatory minimum sentencing framework adopted by the Legislature. On April 27, 1981, Chief Justice Wilentz issued a memorandum "to ensure that mandatory prison terms pursuant to N.J.S.A. 2C:43-6(c), the Graves Act, were imposed in accordance with the Legislature's intent." Admin. Off. of the Cts.,

13

Admin. Directive #09-18, Guidelines for Downgrading/Dismissals Under the Graves Act: Strict Enforcement of Mandatory Minimum Custodial Terms for Offenses Involving Firearms (July 2, 2018) (describing Administrative Directive #10-80, "Sentencing Guidelines for Dismissals Under the Graves Act" (April 27, 1981)) (AOC Directive #09-18).  That memorandum remains in effect to this day.

In State v. Des Marets, the Court stated that, under the then-applicable provisions of the Graves Act, a person who was convicted of an offense that came within the ambit of the Act, could not "escape a mandatory minimum imprisonment of at least three years."[3]  92 N.J. at 73.  The Court stated that the Graves Act reflected the Legislature's intent "to deter the use of firearms by establishing mandatory minimum terms of imprisonment to ensure certainty of punishment."  Ibid.

In Nance, our Court set forth further procedural steps that must be followed in connection with the imposition of a sentence which includes a

---

[3]  In 2007, the Legislature amended N.J.S.A. 2C:43-6(c), greatly expanding the reach of the Graves Act.  See L. 2007, c. 341 (codified at N.J.S.A. 2C:43-6).  In addition to expanding the scope of the Graves Act by significantly increasing the number of gun offenders subject to a mandatory minimum sentence, the 2007 amendment increased the mandatory minimum term of parole ineligibility from three years to forty-two months.  L. 2007, c. 341, § 5.

Graves Act waiver application. 228 N.J. at 397. Under this procedure, the question before the Court was not whether, in its view, a parole ineligibility term of one year was more appropriate; the question was whether the State committed a patent and gross abuse of discretion in denying the waiver of the mandatory minimum sentence. See Rodriguez, 466 N.J. Super. at 97.

Here, defendant filed a waiver motion on the eve of sentencing. At the sentencing hearing, his counsel was not prepared to proceed on the motion and requested a postponement. The trial court denied the request and then failed to make any determinations when addressing defendant's motion to overrule the State's denial of a waiver pursuant to the Graves Act, and instead simply supplanted its judgment for that of the State's. As such, the failure to impose the mandatory minimum term of forty-two months renders the sentence illegal, gives the State standing, and requires us to remand the matter for resentencing.

On remand, the court should allow defendant to submit a brief and the State to file a reply on the issue of whether the State's failure to seek a Graves Act waiver constituted a patent and gross abuse of discretion. Once both parties have had an opportunity to be heard and the court has made its findings, the court may then resentence defendant.

In making its decision the court should consider that "[i]n 2008, the New Jersey Attorney General issued a directive 'to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing' the Graves Act." Benjamin, 228 N.J. at 369 (quoting Off. of the Att'y Gen., Directive to Ensure Uniform Enforcement of the "Graves Act" § 6(a), at 10 (rev. Nov. 25, 2008)) [the "Directive"]. The Directive "provides clear parameters for prosecutors contemplating a waiver," and while occasionally "prosecutors in different counties may reach different Graves Act waiver conclusions, [the courts] have recognized that some disparity in sentencing is inevitable." Id. at 372 (first citing Directive, § 6, at 10-15; and then citing State v. Brimage, 153 N.J. 1, 22 (1998)). "[T]he Directive requires prosecutors to 'document in the case file [their] analysis of all the relevant aggravating and mitigating circumstances.'" Ibid. (alteration in original) (quoting Directive, § 6(d), at 13).

Additionally, "because the State is obligated to provide the case-specific files containing its statement of reasons to the assignment judge to consider in assessing the prosecutor's conduct," the assignment judge is permitted to "maintain[] those files and rely[] on them in evaluating 'the prosecutor's . . . decision[] . . . .'" State v. Andrews, 464 N.J. Super. 111, 123 (App. Div. 2020) (quoting Benjamin, 228 N.J. at 373). "[T]he comparative analysis the trial court

16

conduct[s]—examining past cases where the prosecutor had granted Graves Act waivers—is a legitimate component of the robust judicial review needed to ensure that a prosecutor's rejection of a Graves Act waiver" is not unconstitutionally arbitrary. Rodriguez, 466 N.J. Super. at 92. Both parties should be given the opportunity to address any questions the court may have about these other cases.

The sentence is reversed, and the matter is remanded for resentencing in accordance with the procedural and substantive requirements described in this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1626-23