**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5620-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN PEREZ,

     Defendant-Appellant.

_____

Argued September 15, 2021 – Decided October 7, 2021

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 11-12-2992.

Before Judges Hoffman and Geiger.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Debra B. Albuquerque, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Cary Shill, Acting Atlantic County Prosecutor, attorney; John J. Lafferty, IV, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jonathan Perez appeals from a June 20, 2019 Family Part order granting an involuntary waiver from the Family Part to the Law Division and a June 28, 2019 judgment imposing a twenty-four-year sentence subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on his conviction for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1).  We affirm.

I.

We recounted the underlying facts in State v. Perez, No. A-3942-16 (App. Div. Nov. 26, 2018), certif. denied, State v. Perez, 238 N.J. 379 (2019).

> At approximately 2:00 a.m. on July 29, 2011, patrol units of the Atlantic City Police Department were flagged down and also summoned by a 911 call regarding a man who was assaulted and lying on the ground.  The responding officers found the victim, who exhibited substantial facial injuries, lying unconscious on the sidewalk, in a pool of blood.  Medical assistance was requested and the victim, who remained unconscious and unresponsive, was transported to the hospital by ambulance.
>
> . . . .
>
> [A] surveillance video of the incident depicted an individual sitting on a milk crate. . . . . The victim is hit by a milk crate and falls.  Defendant is shown hitting [and] . . . picking the victim up, throwing him to the sidewalk, and stomping on him.  Defendant then rolls the victim over, takes his wallet, and runs off.

2

[Ibid. (slip op. at 3-5).]

The victim died at the hospital three days later. Id. at 6. The autopsy report "list[ed] the cause of death as blunt head trauma and the manner of death as a homicide. The preliminary autopsy findings were the victim sustained fractures of two ribs, his occipital bone, and facial bones; subdural hemorrhages; a subarachnoid hemorrhage; a parenchymal hemorrhage"; and other injuries. Ibid.

The assault took place just fifteen days before defendant's eighteenth birthday. Defendant was charged with acts that, if committed by an adult, would have constituted first-degree murder, N.J.S.A. 2C:11-3(a)(2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1(a); second-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

The State moved to waive jurisdiction to the Law Division under the former waiver statute, N.J.S.A. 2A:4A-26. It noted defendant faced a maximum thirty-year to life NERA term if convicted in adult court, but a maximum indeterminate twenty-year term in the Family Part. The State did not offer a

plea to juvenile delinquency charges to defendant.  Defendant did not introduce evidence or present witnesses at the waiver hearing.

Applying N.J.S.A. 2A:4A-26, the judge noted the State was only required to show there was probable cause that defendant committed an offense rendering him eligible for waiver and that he was at least sixteen years old when the offenses were committed.  Perez, (slip op. at 3).  The judge found probable cause for the charges and that defendant was seventeen years old when the incident occurred, and ordered jurisdiction waived to the Law Division.  Id. at 6-7.

Over the course of several years, defendant was found not competent to stand trial.  Ultimately, in October 2016, defendant was deemed competent to stand trial.

In February 2017, defendant pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in exchange for a recommended twenty-four-year NERA term and dismissal of the remaining charges.  The plea agreement preserved defendant's right to appeal the juvenile waiver and competency to stand trial rulings.

Defendant was twenty-three years old when sentenced.  He had no prior adjudications of juvenile delinquency or criminal convictions.  The judge found aggravating factors one (offense committed in an especially heinous, cruel, or

4

depraved manner), N.J.S.A. 2C:44-1(a)(1); three (risk defendant will commit another offense), N.J.S.A. 2C:44-1(a)(3); nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9); and mitigating factor seven (defendant has no history of prior delinquency or criminal activity), N.J.S.A. 2C:44-1(b)(7). Defendant was sentenced in accordance with the plea agreement and received 2072 days credit for time served.

Defendant appealed the involuntary waiver, the competency to stand trial ruling, and his sentence. We held that the State established probable cause for the charges. Perez, (slip op. at 9, 20 n.1). We affirmed the ruling that defendant was competent to stand trial. Id. at 22-23.

As to involuntary waiver, we noted that the Family Part judge did not reach or decide whether the prosecutor's decision to waive jurisdiction to the Law Division complied with the substantive requirements of the Attorney General's Juvenile Waiver Guidelines (March 14, 2000) and "whether it constituted a patent and gross abuse of discretion." Id. at 20 (quoting State ex rel. D.Y., 398 N.J. Super. 128, 132 (App. Div. 2008)). Because the case was on direct appeal and the revised waiver statute, N.J.S.A. 2A:4A-26.1, is afforded pipeline retroactivity, id. at 20 (citing State ex rel. N.H., 226 N.J. 242, 255 (2016)), we remanded the case to the Family Part to make those determinations,

including consideration of the factors set forth in N.J.S.A. 2A:4A-26.1(c)(3). Id. at 20-21. The prosecutor was permitted "to submit a revised statement of reasons for the waiver addressing each of the factors" enumerated in N.J.S.A. 2A:4A-26.1(c)(3). Id. at 21. We did not reach defendant's sentencing arguments. Id. at 24.

On remand, the prosecutor submitted a revised statement of reasons addressing the following statutory factors "to be considered by the prosecutor when deciding whether to seek a waiver":

> (a) The nature and circumstances of the offense charged;
>
> (b) Whether the offense was against a person or property, allocating more weight for crimes against the person;
>
> (c) Degree of the juvenile's culpability;
>
> (d) Age and maturity of the juvenile;
>
> (e) Any classification that the juvenile is eligible for special education to the extent this information is provided to the prosecution by the juvenile or by the court;
>
> (f) Degree of criminal sophistication exhibited by the juvenile;
>
> (g) Nature and extent of any prior history of delinquency of the juvenile and dispositions imposed for those adjudications;

6

(h) If the juvenile previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission, and the response of the juvenile to the programs provided at the facility to the extent this information is provided to the prosecution by the Juvenile Justice Commission;

(i) Current or prior involvement of the juvenile with child welfare agencies;

(j) Evidence of mental health concerns, substance abuse, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court; and

(k) If there is an identifiable victim, the input of the victim or victim's family.

[N.J.S.A. 2A:4A-26.1(c)(3).]

As to factor (a), the nature and circumstances of the offenses charged, the prosecutor recounted the facts of the robbery and homicide and noted defendant was charged with murder, which weighed heavily in favor of waiver.

As to factor (b), whether the offense was against a person or property, the prosecutor described the gruesome nature of the offenses committed against a person, which weighed heavily in favor of waiver.

As to factor (c), the degree of the juvenile's culpability, the prosecutor stated defendant was "solely responsible" for the victim's death, which weighed heavily in favor of waiver.

7

As to factor (d), the age and maturity of the juvenile, the prosecutor noted defendant was only two weeks shy of his eighteenth birthday when he fatally assaulted the victim, and submitted this weighed heavily in favor of waiver.

As to factor (e), classification that the juvenile is eligible for special education, the prosecutor acknowledged defendant "came from an intact, supportive family" and attended special education classes. While defendant reportedly "had below average academic functioning," the prosecutor emphasized that the "reports were prepared while [defendant] was feigning incompetence." The prosecutor submitted this weighed in favor of waiver.

As to factor (f), the degree of criminal sophistication exhibited by the juvenile, the prosecutor noted defendant "brutally and viciously attacked [the] victim" and was the "sole attacker," which weighed heavily in favor of waiver.

As to factor (g), the nature and extent of any prior adjudications of delinquency and the dispositions imposed, the prosecutor noted defendant had four juvenile arrests that were either referred to an intake officer, resulted in a deferred disposition and eventual dismissal, or handled by a juvenile referee. The prosecutor found defendant's "escalating criminal activity weigh[ed] heavily in favor of waiver."

As to factor (h), whether the juvenile previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission, the prosecutor acknowledged this factor did not favor waiver as defendant had not served a custodial disposition.

As to factor (i), the current or prior involvement of the juvenile with child welfare agencies, the prosecutor noted defendant reported that the Division of Youth and Family Services (DYFS) was involved with his family for a few years when he was twelve, relating to problems at school and truancy. However, "DYFS involvement is not mentioned in any other record, and other reports have indicated that his family had no DYFS involvement[]. Accordingly, no materials have been provided to the [S]tate to indicate that he had involvement with child welfare agencies."

As to factor (j), evidence of mental health concerns, substance abuse, or emotional instability of the juvenile, the prosecutor contended that defendant "feigned incompetence" to stand trial. Jonathan H. Mack, Psy.D., a clinical neuropsychologist, opined defendant was likely "exaggerating his adaptive functioning difficulties" during testing "to support his claim of incompetency," and noted defendant's low IQ scores were invalid due to his malingering. The prosecutor contended defendant's "admission that he 'malingered and falsified

9

his mental issues,' in order to get a better plea offer," demonstrated "a higher degree of understanding and comprehension." Dr. Mack found him competent to stand trial.

Dr. Joanna Bajgier was defendant's treating psychiatrist. Her September 18, 2015 report noted defendant was able to speak Spanish and English and was "alert" and "fully oriented" during the evaluation. She found his thought processes were goal directed and his speech was normal. Defendant denied having hallucinations and did not express any delusional thought content. As a result of defendant's statements to Dr. Bajgier and admission to a corrections officer that he lied about being mentally ill, his antipsychotic medication was discontinued. Dr. Bajgier found defendant competent to stand trial.

The prosecutor submitted these facts weighed heavily in favor of waiver but did not address defendant's substance abuse.

As to factor (k), the input of the victim or victim's family, the prosecutor noted the deceased victim was seventy-one years old when brutally attacked. The prosecutor did not provide any input from the victim's family.

On June 20, 2019, the court conducted the waiver motion rehearing. Counsel relied on the written submission and numerous exhibits. The exhibits included the expert reports relating to the competency to stand trial motion. No

10

witnesses testified during the rehearing. The remand judge issued a lengthy oral decision granting involuntary waiver under N.J.S.A. 2A:4A-26.1. She recounted the evidence adduced during the hearing to determine defendant's competency to stand trial and relied on the motion judge's findings, including the credibility and weight to be given to the expert reports. The judge also performed a comprehensive review of the prosecutor's revised statement of reasons.

As to factor (a), the judge described the nature and circumstances of the charges that defendant faced and noted "[t]he video depicted a single assailant." (Defendant did not object to the State's position as to factor (a). The judge found the prosecutor's position was adequately set forth and accurate.

As to factor (b), the judge noted that defendant did not take issue with the prosecutor's position that the offenses were committed against an identified person, the murder charge is the most serious offense in the criminal code, and this factor weighed heavily in favor of waiver.

As to factor (c), the degree of defendant's culpability, the judge again noted that the video depicted defendant as the sole assailant who caused the victim's death. Defendant did not take issue with this factor weighing heavily in favor of waiver.

As to factor (d), defendant's age and maturity, the judge noted that defendant was only two weeks shy of his eighteenth birthday on the date of the incident. Defendant objected to the State relying solely on his chronological age without considering his maturity level. Defendant argued he only had a ninth-grade education and that there were past reports of low IQ, illiteracy, lack of social sophistication, and limited receptive and expressive ability. The State countered that Dr. Bajgier found defendant understood the court system and had admitted to playing the system and recounted her other findings. The judge found defendant was over the age of fourteen when the offenses were committed. See N.J.S.A. 2A:4A-26.1(c)(1). She also found no information had "been provided to rebut that [defendant] is mature enough to understand the seriousness of the criminal act," "what the circumstances were, the harm he was causing" to the victim, "and the seriousness of the offense. . . ." The judge also found this factor was adequately considered by the prosecutor.

As to factor (e), classification for special education, the judge noted the prosecutor acknowledged that defendant attended special education classes and that Dr. Charles Kaska, a psychiatrist, opined that defendant had below average academic functioning. Defendant objected to the prosecutor's conclusion that the following factors weighed in favor of waiver: defendant's special education,

12

history of cognitive delay, and diagnosis of an unspecified learning disability. Defendant further contended that his feigning incompetence should be disregarded under this factor. The State countered that Dr. Mack found it likely that defendant exaggerated his adaptive functioning difficulties as part of his malingering to support his claim of incompetency.

The judge concluded the prosecutor gave individualized attention to this factor and that it weighed in favor of waiver. The judge found that although defendant "had a low functioning ability [and] was in special education classes for some time, the extent to which [defendant's] mental health issues or classifications in school affected his ability to act on July 11th is not clear." She noted that defendant's ability to malinger seemed to indicate "a higher degree of understanding and comprehension."

As to factor (f), the juvenile's degree of criminal sophistication, defendant did not take issue with the prosecutor's position that the defendant's conduct as the sole attacker weighed heavily in favor of waiver.

As to factor (g), the nature and extent of any prior history, defendant did not contend the prosecutor's recitation of defendant's juvenile history was inaccurate.

As to factor (h), the court noted the prosecutor acknowledged that defendant had not served a custodial disposition in a state juvenile facility.

As to factor (i), current or prior involvement with child welfare agencies, the judge noted that defendant self-reported (to Dr. Mack) that DYFS was involved with his family for a few years beginning when he about twelve years old, and this was secondary to his truancy from school. DYFS involvement was not indicated in any records and other reports indicated his family had no DYFS involvement. The prosecutor claimed this weighed in favor of waiver. The defendant argued the prosecutor ignored this information. The judge explained that the only information regarding child welfare agency involvement was what defendant self-reported, however incomplete, and that the prosecutor did not ignore this information. The judge concluded that while there may have been some DYFS involvement, it did not weigh against waiver.

As to factor (j), evidence of mental health concerns, substance abuse or emotional instability, the judge noted Dr. Mack opined that defendant was feigning incompetency to avoid trial, exaggerating his adaptive functioning difficulties during testing, and malingering. The prosecutor asserted this weighed strongly in favor of waiver. Defendant contended the prosecutor ignored that defendant had been diagnosed with substance abuse (cannabis abuse

and alcohol dependence) and was under the influence of alcohol, cocaine, and psychiatric medications when he committed the offenses. Defendant reported that he had been drinking alcohol from an early age, smoking marijuana, using cocaine on a regular basis, and admitted to selling drugs to support his habit. The judge noted the prosecutor did not address the substance abuse. Nevertheless, the judge discounted the self-reported substance abuse because defendant was malingering.

As to factor (k), identifiable victim and input of the victim's family, defendant does not take issue with there being an identified victim and the absence of family input.

Considering the prosecutor's statement of reasons as a whole, the judge found that except for factor (j), the prosecutor considered and addressed each statutory factor and did not abuse his discretion in applying for waiver. Coupled with the finding of probable cause for the charges and defendant's age, the judge granted the waiver to the law Division. This appeal followed.

In this appeal, defendant argues:

POINT I

THE PROSECUTOR'S DECISION TO WAIVE [DEFENDANT] TO ADULT COURT WAS AN ABUSE OF DISCRETION BECAUSE THE PROSECUTOR CONSIDERED INAPPROPRIATE

15

FACTORS, FAILED TO CONSIDER RELEVANT FACTORS, AND THE DECISION CONSTITUTED A CLEAR ERROR IN JUDGMENT.

A. The Prosecutor Abused Her Discretion by Improperly Ignoring Ample Credible Evidence in the Record that [Defendant] was Classified as Eligible for Special Education N.J.S.A. 2A:4A-26.1(c)(3)(e), and Improperly Concluding that this Factor Weighed in Favor of Waiver.

B. The Prosecutor's Dismissal of an Abundance of Evidence Regarding [Defendant's] Substance Abuse and Mental Health Concerns and Clear Error in Judgement in Determining that Factor (j) Weighed in Favor of Waiver, was an Abuse of Discretion.

C. The Prosecutor Abused Her Discretion in Finding that Because There was no Documented History of [Defendant's] Involvement with a Child Welfare Agency, that the Corresponding Factor, N.J.S.A. 2A:4A-26.1(c)(3)(i), Weighed in Favor of Waiver to Adult Court.

D. The State's Improper Consideration of Two Dismissed Arrests and a Juvenile Diversion in Finding That Factor (g), which Requires Consideration of Prior "Adjudications" and "Dispositions," Weighs Heavily in Favor of Waiver, when [defendant] has no Prior Adjudications or Dispositions, Constitutes an Abuse of Discretion and is a Violation of State v. K.S., 220 N.J. N.J. 190 (2015).

E. Because a spontaneous attack by a juvenile under the influence does not evince criminal sophistication, the prosecutor abused her discretion in finding factor (f), the "[d]egree of criminal sophistication exhibited

A-5620-18

by the juvenile," N.J.S.A. 2A:4A-26.1, weighed heavily in favor of waiver.

F. The Prosecutor's Failure, When Evaluating [defendant's] Degree of Culpability, to Consider Evidence in the Record Showing Possible Coercion by Other, More Mature Individuals, and the Fact that [defendant] was Under the Influence of Alcohol and Drugs at the Time of the Incident, Constitutes an Abuse of Discretion.

G. Finding that [Defendant's] Age and Maturity, N.J.S.A. 2A:4A-26.1(c)(3)(d), Weighed in Favor of Waiver Based on His Chronological Age and One Doctor's Malingering Diagnosis, when Facts Pertaining to his Mental Status and Intellectual Ability Prove Otherwise, was an Abuse of Discretion.

POINT II

SHOULD THIS COURT AFFIRM, THIS MATTER MUST BE REMANDED TO THE TRIAL COURT FOR A HEARING PURSUANT TO STATE V. KOVACK, 91 N.J. 476 (1982).

POINT III

[DEFENDANT'S] TWENTY-FOUR-YEAR NERA SENTENCE, INCURRED FOR AN OFFENSE COMMITTED WHILE A JUVENILE, MUST BE VACATED AND THE MATTER REMANDED BECAUSE THE COURT FAILED TO CONSIDER HIS AGE, ATTENDANT CIRCUMSTANCES, AND MENTAL ILLNESS AND IMPROPERLY FOUND NON-STATUTORY AGGRAVATING FACTORS.

II.

"[W]aiver to the adult court is the single most serious act that the juvenile court can perform." State v. R.G.D., 108 N.J. 1, 4 (1987) (citation omitted). Upon conviction, a juvenile waived to adult court "will be exposed to much more severe punitive sanctions, often including lengthy prison terms and mandatory periods of parole ineligibility. In addition, the offender will no longer be eligible for the special programs available to juveniles." State in Int. of Z.S., 464 N.J. Super. 507, 513 (App. Div. 2020).

In March 2000, the Attorney General adopted Guidelines (the AG Guidelines) pursuant to N.J.S.A. 2A:4A-26(f), which

> instructed prosecutors seeking to file a juvenile waiver motion to consider: (1) the nature of the offense; (2) the need for deterrence; (3) the effect of the waiver on the prosecution of any co-defendants; (4) the maximum sentence and length of time served; (5) the juvenile's prior record; (6) trial considerations, such as the likelihood of conviction and the potential need for a grand jury investigation; and (7) the victim's input.
>
> [State v. J.V., 242 N.J. 432, 437 (2020).]

The AG Guidelines "directed prosecutors filing a waiver motion to include a statement of reasons addressing the prosecution's consideration and the applicability of the factors." Ibid. Submission of the written statement of

reasons enables judges to determine whether the reasons seeking waiver were arbitrary. State v. J.M., 182 N.J. 402, 419 (2005)).

In 2015, the Legislature enacted major revisions to the waiver statute, effective March 1, 2016. L. 2015, c. 89, § 1. The revised statute "requires the waiver motion to be 'accompanied by a written statement of reasons' from the prosecutor 'clearly setting forth the facts used in assessing all [of the enumerated waiver] factors . . . together with an explanation as to how evaluation of those facts supports waiver for each particular juvenile.'" Z.S., 464 N.J. Super. at 516 (quoting N.J.S.A. 2A:4A-26.1(a)). N.J.S.A. 2A:4A-26.1(c)(3) enumerates eleven factors to be considered by the prosecutor "in deciding whether to seek a waiver."

"The revised statute does continue the strong presumption in favor of waiver for certain juveniles who commit serious acts and maintains the associated 'heavy burden' on the juvenile to defeat a waiver motion." Z.S., 464 N.J. Super. at 519-20 (quoting R.G.D., 108 N.J. at 12).

Our standard of review of the prosecutor's waiver decision is deferential. Ibid. "The trial court should uphold the decision unless it is 'clearly convinced that the prosecutor abused his discretion in considering' the enumerated statutory factors." Id. at 520 (quoting N.J.S.A. 2A:4A-26.1(c)(3)).

We first address the sufficiency of the prosecutor's revised statement of reasons for defendant's waiver to the Law Division. "[T]he State has an 'affirmative obligation to show that it assessed all the [statutory] factors' concerning waiver, and the court must review this assessment." Id. at 533 (quoting State in Int. of N.H., 226 N.J. 242, 251 (2016)). In doing so, the State must "lay[] out the facts it relied on to assess the eleven statutory factors, 'together with an explanation as to how evaluation of those facts support waiver for each particular juvenile.'" Ibid. (quoting N.J.S.A. 2A:4A-26.1(a)). "The statement of reasons should apply the factors to the individual juvenile and not simply mirror the statutory language in a cursory manner." Ibid. (quoting N.H., 226 N.J. at 250). It "cannot be incomplete or superficial" and should not "ignore or gloss over highly relevant information." Z.S., 464 N.J. Super. at 534. "The written statement must reasonably address the content of the defense material and explain why it is flawed, inadequately supported, internally contradictory, or otherwise unpersuasive." Ibid.

Based on our careful review of the record, we discern no abuse of discretion warranting our intervention. Defendant did not demonstrate that the prosecutor clearly and convincingly abused his discretion in considering the statutory factors when considered in their entirety. Although the prosecutor did

20

not discuss defendant's self-reported substance abuse (factor (j)), fully consider his eligibility for special education (factor (e)), and gave no weight to defendant's self-reported involvement with DYFS due to school problems and truancy (factor (i)), the evidence submitted regarding those factors was minimal and uncorroborated. The prosecutor fully considered and gave appropriate weight to the other factors.

Without any supporting records, the self-reported DYFS involvement at ages twelve to fourteen relating to truancy and problems at school would have limited impact in a waiver analysis relating to a homicide that occurred years later. Similarly, in the absence of any substance abuse evaluation recommending inpatient or intensive outpatient treatment, defendant's self-reported abuse of alcohol, marijuana, and cocaine would also have limited value, particularly given defendant's malingering.

Moreover, even if factors (e), (i), and (j) weighed to some degree against waiver, in balance, we are convinced that the statutory factors clearly favored waiver to the Law Division. A "waiver analysis is not a counting exercise. Some factors can have more importance or probative strength than others." Id. at 542. As we noted in Z.S., "the severity of the charged offense may often be, quite logically, a very weighty consideration in favor of waiver. . . ." Id. at 538 n.12.

We are mindful that defendant was charged with murder, the most serious offense in the Criminal Code. Defendant brutally assaulted the seventy-one-year-old victim, rendering him unconscious and causing his death three days later. Defendant inflicted severe head injuries by repeatedly striking and stomping the victim's head. The assault was unprovoked, and the aged victim offered no resistance. The fatal beating was inflicted out by defendant alone when he was just fifteen days shy of his eighteenth birthday.

Additionally, the judge who ultimately determined that defendant was competent to stand trial "gave more weight to the conclusions reached by Dr. Bajgieer and Dr. Mack, finding them to be 'much more thorough and persuasive than that of Dr. Kaska.'" Perez, (slip op. at 23-24). We concluded that those findings were fully supported by the record. Id. at 24. Dr. Mack diagnosed defendant with malingering. He found that while defendant may have learning disabilities, "these are indeterminate without further testing" and such testing was "not possible at this time . . . as [defendant] is clearly malingering." Dr. Mack also opined there was "no definitive evidence" that defendant "has Mild Intellectual Disability/Mild Mental Retardation, as opined by Dr. Kaska." Dr. Mack found that the test data suggested that defendant's IQ test was invalid due

to his malingering. He also questioned the validity of "any other measures of cognitive effort or symptom reporting response bias . . . . "

The facts in Z.S. are distinguishable. Unlike the juvenile in Z.S., defendant did not produce an Individual Education Plan or any other school records. He relied solely on self-reporting. Moreover, defendant was not declared disabled and eligible for Supplemental Social Security Income (SSI).

As to the involvement of DYFS, defendant did not produce any DYFS reports or testimony regarding the nature and extent of the Division's involvement. In contrast to Z.S., there is no evidence in the record that defendant was physically abused as a child. Defendant did not suffer untreated sexual molestation at a young age. Importantly, defendant was not charged with offenses directly related to any prior abuse.

The record supports the Family Part judge's detailed findings and conclusions, and we are satisfied there was no abuse of discretion or denial of justice under the law. We thus discern no basis to overturn her decision.

III.

Defendant argues that if we affirm the involuntary waiver, the case must be remanded for a hearing pursuant to State v. Kovack, 91 N.J. 476 (1982). This argument lacks sufficient merit to warrant extended discussion in this opinion.

R. 2:11-3(e)(2).  The plea forms and plea hearing transcript refute any claim that defendant was not made fully aware of the recommended sentence, including the parole ineligibility consequences of his plea under NERA.  The imposition of a twenty-four-year NERA term was not "beyond defendant's reasonable expectations."  Kovack, 91 N.J. at 483.  A Kovack hearing is unnecessary where, as here, the record demonstrates that defendant was advised of and understood his "ineligibility for parole" under the recommended sentence.  See id. at 481-82 (quoting State v. Davis, 175 N.J. Super. 130, 148 (App. Div. 1980)).

IV.

Defendant argues that his twenty-four-year NERA term, imposed for an offense committed as a juvenile, must be vacated because the sentencing judge failed to consider his age, attendant circumstances, and mental illness, and applied non-statutory aggravating factors.  Defendant contends that had the judge "properly considered his age and circumstances, [he] would likely have received a lower sentence."  We are unpersuaded.

The judge gave great weight to aggravating factor one, stating that "defendant exhibited extreme violence and depravity in using a milk crate to deliver injuries upon the victim that resulted in his death."  The judge concluded

24

that "[t]he extreme violence used against the victim was certainly above and beyond that which was necessary to accomplish the offense."

The judge also gave great weight to aggravating factor three, finding "as an aggravating circumstance," defendant's abuse of alcohol, malingering, and feigning of mental issues that resulted in delaying the case, that showed "defendant [was] not coming to complete terms with his criminality. . . ." This was graphically illustrated by defendant's allocution at the sentencing hearing when he reverted back to claiming that his feigned "mental issues" caused his behavior.

> I'd like to say that I wasn't in the right state of mind when I committed this problem. I was having problems with myself, and I was taking medication, and drink and took alcohol. . . . But, what I did was while I was hearing voices, and that's why I did what I did.
>
> And that's what caused my problems, and that's why I get involved in like this, and this is why I have these problems. They're deep within me. That's why I need to be on medication, and take it, for mental issues.

The judge found this lack of insight gave "reason to believe that, given the opportunity to commit another offense, this defendant will, and he will do so violently."

Defendant also contends the sentencing judge erred by considering his substance abuse and malingering as "an aggravating circumstance. . . ." We

25

disagree. We recognize that sentencing courts may not import aggravating factors that are not delineated in the Code's sentencing scheme. State v. Thomas, 356 N.J. Super. 299, 310 (App. Div. 2002) (citing State v. Roth, 95 N.J. 334, 363-64 (1984); N.J.S.A. 2C:44-1(a)). Thus, a sentencing court may not consider the defendant's drug addiction as an aggravating factor. State v. Baylass, 114 N.J. 169, 179 (1989). Nevertheless, "[w]hen a trial court imposes a sentence based on defendant's guilty plea," it is not limited to defendant's admissions and his version of the crime; "it should consider 'the whole person,' and all the circumstances surrounding the commission of the crime." State v. Sainz, 107 N.J. 283, 292-93 (1987). Here, the judge considered defendant's abuse of alcohol, malingering, and feigning mental illnesses as an "aggravating circumstance" directly related to the risk defendant would reoffend, not as independent aggravating factors. We discern no error.

The judge also applied aggravating factor nine, finding "an obvious need to deter this defendant from further criminality. Only a substantial commitment to State Prison will answer that need."

The judge applied mitigating factor seven, noting defendant had no prior history of serious delinquency or criminal activity.

A-5620-18

The judge concluded that the aggravating factors substantially outweighed the single mitigating factor. These findings are fully supported by the record. Defendant was sentenced in accordance with the negotiated plea agreement. Therefore, a "presumption of reasonableness . . . attaches to [his sentence]." State v. S.C., 289 N.J. Super. 61, 70 (App. Div. 1996) (alteration in original) (quoting Sainz, 107 N.J. at 294).

Defendant further contends the judge erred by not weighing his mental illness under mitigating factor four (substantial grounds tended to excuse or justify defendant's conduct, though failing to establish a defense), N.J.S.A. 2C:44-1(b)(4). We disagree. First, defendant admittedly feigned his mental illness by lying to evaluating and treating professionals. Second, defendant proffered no expert that opined that his crimes were causally related to his alleged mental illness. In that regard, even Dr. Kaska "did not observe any evidence of a thought disorder." Third, if one disregards his feigned symptoms and resulting diagnosis of a thought disorder, his remaining diagnoses do not tend to excuse or justify his violent conduct. Fourth, defendant has not demonstrated that he was so emotionally impaired and mentally limited that he could not comprehend the wrongfulness of his conduct. Cf. State v. Jarbath, 114 N.J. 394, 414-15 (1989) (applying mitigating factor four to a defendant who was

27

so emotionally impaired and intellectually disabled that she could not comprehend the wrongfulness of her conduct). Fifth, as reflected by application of aggravating factor one, defendant's unprovoked violence far exceeded that necessary to steal the victim's wallet.

We reach a similar conclusion regarding defendant's substance abuse. He claims he was under the influence of alcohol, marijuana, and cocaine during the incident. Defendant does not claim that a drug-induced psychosis precipitated the fatal attack. Indeed, defense counsel stated during the sentencing hearing that defendant was "not asserting his mental health or intoxication or any of those defenses." Nor has he proffered an expert opinion that these substances somehow excused or justified his violent conduct. Moreover, drug dependency is not a mitigating factor tending to excuse or justify a defendant's conduct, State v. Ghertler, 114 N.J. 393, 389-90 (1989), and intoxication does not mitigate an offense, State v. Setzer, 268 N.J. Super. 553, 567 (App. Div. 1993).

Finally, defendant argues that the sentencing judge erred by not considering his youth. We disagree. "N.J.S.A. 2C:44-1(b) was amended effective October 19, 2020, to add the defendant's youth (i.e., less than twenty-six years of age) to the statutory mitigating factors." State v. Tormasi, 466 N.J. Super. 51, 66 (App. Div. 2021) (citing N.J.S.A. 2C:44-1(b)(14)). Defendant was

sentenced more than three years earlier on April 13, 2017. Mitigating factor fourteen is applied prospectively. Therefore, unless we remand for resentencing, mitigating factor fourteen does not apply. See State v. Bellamy, 468 N.J. Super. 29, 48 (App. Div. 2021) (mitigating factor fourteen applicable on resentencing but not to "cases in the pipeline in which a youthful defendant was sentenced before October 19, 2020").

Defendant was not sentenced to "life without parole" or "the practical equivalent of life without parole" as defined in State v. Zuber, 227 N.J. 422, 446-48 (2017). He was sentenced to a 24-year NERA term that requires him to serve 85 percent or 20-years and 146 days before he is eligible for parole. At sentencing, defendant had already accrued 2072 days credit for time served. He will be eligible for parole at age thirty-eight and will max out at age forty-two. His twenty-four-year NERA term is hardly the practical equivalent of life without parole. See Tormasi, 466 N.J. Super. at 66 (noting a life term with a thirty-year parole bar resulting in eligibility for parole at age forty-seven was "far from a de facto life sentence"); State v. Bass, 457 N.J. Super. 1, 13-143 (App. Div. 2018) (holding an aggregate life term with a thirty-five-year parole bar was not the functional equivalent of life without parole). Because the sentence was not the "practical equivalent of life without parole," the sentencing

court was not required to consider the factors set forth in <u>Miller v. Alabama</u>, 567 U.S. 460 (2012), including defendant's age at the time of the offense. <u>Zuber</u>, 227 N.J. at 429. Accordingly, resentencing is not required. <u>Tormasi</u>, 466 N.J. Super. at 66.

In sum, we affirm both the waiver of jurisdiction from the Family Part to the Law Division and defendant's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5620-18